JOHN L. AND PAMELA S. LOUDERBACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
LOUDERBACK v. COMMISSIONER
Docket No. 25537-92
United States Tax Court
T.C. Memo 1995-19; 1995 Tax Ct. Memo LEXIS 19; 69 T.C.M. (CCH) 1675; January 17, 1995, Filed *19 Decision will be entered under Rule 155. John L. Louderback and Pamela S. Louderback, pro sese. For respondent: Edwin A. Herrera and Guy Glasser. JACOBS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' 1988 and 1989 Federal income taxes in the amounts of $ 11,613 and $ 7,789, respectively. After concessions by petitioners, the remaining issues for decision are: (1) Whether petitioners are entitled to charitable contribution deductions in excess of the amounts allowed by respondent; (2) whether petitioners are entitled to net operating loss carryover deductions; and (3) whether petitioners are entitled to deductions for book-writing expenses. Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Redlands, California, at the time they filed their petition. For ease of understanding, we combine our findings of fact and opinion under each separate issue heading. We note that for all of the issues, petitioners have the burden of proving error in respondent's determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *20 All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded. Issue 1. Charitable Contribution Deductions
Petitioners claim they are entitled to charitable contribution deductions for both years in issue with respect to lithographs donated to Theta Nu Epsilon Society (Thetu Nu or Society). [1] Respondent contends that the contributions to Theta Nu are not deductible because they were not made to a qualified organization, and because petitioners have not complied with the appraisal verification requirements mandated in section 1.170A-13, Income Tax Regs. We agree with respondent. *21 Prior to the years in issue, John Louderback (husband-petitioner) was a member of Theta Nu. According to husband-petitioner, Theta Nu is a secret society founded in 1870 for pleasure and recreational purposes, as well as to provide financial assistance to college students and to establish a mutually beneficial relationship between colleges, universities, and members of the Society. The Society's national office ceased to exist in the 1940's. After discovering in 1989 that the Society had lost its corporate status, husband-petitioner began the incorporation process for a California chapter of the Society. Theta Nu received corporate status under the laws of the State of California on December 19, 1989. By letter dated June 11, 1991, the Internal Revenue Service determined that Theta Nu was exempt from Federal income tax as an organization described in section 501(c)(7). [2]
*22 Petitioners contributed 13 lithographs featuring works of Salvador Dali and Vasarely to Theta Nu at some time during the years in issue. [3] Prior to the donation, the lithographs had been held in inventory for resale by a picture framing and art retail store owned by husband-petitioner. The store operated in Redlands, California, from November 1984 until it closed in mid-1987. The lithographs donated to Theta Nu had been left over from husband-petitioner's art retail store. Section 170(a) authorizes a deduction for "any charitable contribution (as defined in subsection (c))". Section 170(c) defines "charitable contribution" as: a contribution or gift to or for the use of -- (1) A State, a possession of the United States, or any political subdivision * * * (2) A corporation, trust, or community chest, fund, or foundation * * * * * * (B) organized and operated exclusively for religious, charitable, scientific, *23 literary or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; * * *
(3) A post or organization of war veterans * * * (4) * * * a domestic fraternal society, order, or association, operating under the lodge system, but only if such contribution or gift is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. (5) A cemetery company * * *
Thus, in order to claim the deduction allowed by section 170, a taxpayer must make a contribution to or for the use of one of the types of organizations described in section 170(c). Petitioners have not proven that Theta Nu was a qualified charitable organization on the date (or dates) the lithographs were donated. Specifically, petitioners have not proven that Theta Nu was a corporation operated exclusively for religious, charitable, scientific, literary, or educational purposes on the date (or dates) of the donations. Nor have they proven that *24 Theta Nu was a domestic fraternal society, order, or association "operating under the lodge system" on the date or dates of donations. With respect to the latter category, petitioners have not proven that the lithographs were used exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals. Nor have petitioners complied with the appraisal verification requirements of section 1.170A-13(c), Income Tax Regs.Pursuant to paragraph (c)(2) of the aforementioned regulation section, a donor who contributes property after December 31, 1984, and claims a deduction in excess of $ 5,000 must satisfy the following substantial requirements: (1) The donor must obtain a qualified appraisal for the property contributed; (2) the donor must attach a fully completed appraisal summary to the tax return on which the deduction is first claimed; (3) the donor must maintain records containing the information required by section 1.170A-13(b)(2)(ii), Income Tax Regs.
A "qualified appraisal" is defined in section 1.170A-13(c)(3), Income Tax Regs., as a document that: (1) Relates to an appraisal made no earlier than 60 days *25 before the date of contribution of the appraised property; (2) is prepared, signed, and dated by a qualified appraiser; (3) includes certain information required to be included in a qualified appraisal under section 1.170A-13T(c)(3)(ii), Income Tax Regs.; and (4) does not involve a prohibited appraisal fee (i.e., the appraisal is not based in whole or part on a percentage of the appraised value). Although it would appear petitioners are not entitled to any deduction for their donation of the lithographs to Theta Nu, respondent, in fact, allowed them charitable contribution deductions for the donation to a limited extent. See supra note 1. Assuming deductions for the lithographs donated to Theta Nu are allowable, the amount of the deductions allowable would be limited to petitioners' basis (i.e., cost) in the lithographs because petitioners have failed to show that the lithographs do not constitute ordinary income property or tangible personal property put to an unrelated use, as defined by section 170(e)(1) and the regulations thereunder. At trial, petitioners neither provided any evidence as to the cost of the lithographs, nor provided any evidence to establish the market *26 values of the lithographs on the dates of contribution. We believe respondent allowed petitioners generous deductions with respect to the donation of the lithographs to Theta Nu. Accordingly, we hold that petitioners are not entitled to charitable contribution deductions for the years involved in excess of the amounts allowed by respondent. Issue 2. Net Operating Loss Carryover Deductions
Petitioners claim they are entitled to net operating loss carryover deductions for both years in issue. Respondent claims that the net operating loss carryovers were fully absorbed in a previous tax year. We agree with respondent. Petitioners carried forward a net operating loss from 1985 to 1988 (in the amount of $ 71,625) and to 1989 (in the amount of $ 37,473). In the notice of deficiency, respondent determined that the net operating loss petitioners incurred in 1985, and elected to carryforward to 1988 and 1989, was fully absorbed in 1987. Consequently, respondent disallowed the net operating loss carryovers petitioners claimed for 1988 and 1989. Section 172(a) authorizes a net operating loss deduction. Simply put, a net operating loss is the excess of a taxpayer's deductions *27 over his gross income, with certain modifications. These modifications, which are listed in section 172(d), include capital gains and losses, personal exemption deductions, and nonbusiness deductions. A net operating loss in a given year may be carried back for the 3 preceding years and carried forward for the 15 succeeding years. Sec. 172(b). In 1985, petitioners had an adjusted gross income of negative $ 25,607. [4] *28 Petitioners' itemized deductions for that year totaled $ 28,132, and their personal exemption deductions totaled $ 5,200. Therefore, for 1985, petitioners had a net operating loss, before modifications, of $ 58,939 ($ 25,607 + $ 28,132 + $ 5,200). Pursuant to section 172(d), the $ 58,939 must be reduced by: (1) Petitioners' personal exemption amount ($ 5,200); (2) petitioners' net capital loss ($ 4,777); and (3) the amount by which petitioners' nonbusiness deductions exceeded their nonbusiness income ($ 18,470). Thus, petitioners' net operating loss for 1985, after these modifications, was $ 30,492. This is the amount that was available to be carried forward to 1986 or back to earlier years. [5]
In 1986, petitioners' itemized deductions and personal exemptions exceeded their adjusted gross income. Therefore, they could not carry forward their 1985 net operating loss to 1986. Furthermore, the 1986 loss did not generate an additional net operating loss which could be carried forward. In 1987, petitioners' taxable income, after taking into account the required modifications, was $ 40,451. The full amount of the net operating loss for 1985, namely, $ 30,492, was carried forward to 1987. Accordingly, by 1987, the net operating loss for 1985 was completely absorbed. One discrepancy remains. On Schedule C attached to their 1988 tax return, petitioners listed a net operating loss carryforward of $ 71,625, but they claimed only $ 61,625 as a deduction against income. In disallowing the net operating loss carryforward deduction in the *29 notice of deficiency, respondent mistakenly increased petitioners' 1988 income by $ 71,625, instead of by $ 61,625. Accordingly, we sustain respondent's disallowance of net operating loss carryforward deductions to the extent of $ 61,625 for 1988 and to the full extent in 1989. Issue 3. Book-Writing Expenses Deductions
Petitioners claim they are entitled to capitalize $ 6,264 of expenses husband-petitioner incurred in writing a book during 1989. [6] Respondent argues that petitioners failed to substantiate the book-writing expenses and that therefore no deduction should be allowed. We agree with respondent. Husband-petitioner traveled with his family to various places, including the *30 British Virgin Islands, Washington, D.C., Philadelphia, Pennsylvania, and several universities. In the British Virgin Islands, he looked for the burial place of one of the founders of Theta Nu. Husband-petitioner and his family also visited the Library of Congress and several monuments in Washington, D.C., the Liberty Bell, Yale University, Wesleyan University, and the University of Virginia. Husband-petitioner sought to provide his family with cultural exposure and the opportunity to sightsee. He claims that an additional purpose of the trip was to do research so that he could compose a history of Theta Nu. Petitioners seek to capitalize certain costs from this trip as expenses for writing a book. Section 162 permits a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business. In general, pursuant to section 263A, otherwise deductible costs of tangible personal property produced by the taxpayer must be capitalized, not deducted currently. As an exception to this general rule, qualified expenses of freelance authors need not be capitalized. Sec. 263A(h). [7] Personal expenses are not deductible. Sec. 262. *31 Petitioners have introduced no evidence substantiating the amounts of any of the claimed expenses. This by itself is not fatal because we may estimate expenses if we have some basis to do so. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). The taxpayer must provide a basis for distinguishing between deductible business expenses and nondeductible personal expenses. Vanicek v. Commissioner, supra.Petitioners have failed to provide this basis. Husband-petitioner testified that his book about Theta Nu was virtually complete, and just needed to be published, but petitioners presented no documentary evidence of a completed manuscript. More importantly, petitioners failed to demonstrate how the aforementioned trip contributed to the book. They presented no evidence showing which costs of the trip could be ascribed as expenses related to the writing of the book. Accordingly, we sustain respondent's determination disallowing the deduction for book-writing expenses. To reflect the foregoing and concessions by petitioners, Decision *32 will be entered under Rule 155. Footnotes
1. Petitioners claimed $ 1,174 as a charitable contribution deduction on their 1988 Federal income tax return and $ 2,082 on their 1989 tax return. During the appeals process, petitioners claimed that they had donated lithographs, having a value of $ 104,000, to Theta Nu during the years in issue for which they did not claim a deduction, but now wished to do so. In the notice of deficiency, respondent increased the amount of petitioners' allowable charitable deductions to $ 15,349 for 1988 and $ 9,007 for 1989. According to respondent's pretrial menorandum, the increase in the amounts of charitable deductions allowed was based on statements made by petitioner John Louderback to the Appeals Officer, and accepted, as to the basis for the donated lithographs. Respondent challenges in this proceeding Theta Nu's qualification as an organization described in sec. 170(c)↩, but yet does not seek to disallow the deductions allowed (to a limited extent) in the notice of deficiency for the donated lithographs to Theta Nu. No explanation was given for this apparent inconsistency.
2. Organizations described in section 501(c)(7) are: Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.↩
3. The record does not indicate the date (or dates) on which petitioners made the contribution.↩
4. Petitioners reported a net loss of $ 3,931 for 1985. The negative $ 25,607 was determined by the Fresno Service Center where petitioners filed their return and is the amount respondent used in the notice of deficiency.↩
5. Sec. 172(b) requires that the net operating loss be first carried to the earliest of the taxable years to which such loss may be carried. The record is silent as to why the net operating loss for 1985 was not carried back to any of the 3 preceding years.↩
6. Petitioners did not claim the book-writing expenses on their 1989 Federal income tax return. These expenses were claimed for the first time during the appeals process. In any event, husband-petitioner testified that "the majority of these author expenses were incurred in 1991 and 1992", years subsequent to those in issue.↩
7. At trial, petitioners stated that expenses for book-writing must be capitalized, but neither petitioners nor respondent made any mention of sec. 263A(h)↩.